AT & T CORPORATION, Plaintiff,

v.

U.S. POSTAL SERVICE, Defendant.

No. 96 C 4573.

United States District Court,
N.D. Illinois,
Eastern Division.

Sept. 29, 1998.

Fay Clayton, Robinson, Curley & Clayton, P.C., Chicago, IL, Ron R. Hutchinson, Gerard F. Doyle, Todd R. Metz, Doyle & Bachman, Washington, DC, for AT & T Corp., plaintiffs

Robert T. Oleszkiewicz, Dennis J. Aukstik, John J. George, Michael Daley, Chris Anthony Leach, Mark G. Vanecko, Richard A. Toth, Catherine Wilson Murnane, Daley & George Ltd., Chicago, IL, for Public Communications Services, intervenor.

Matthew David Tanner, United States Attorney's Office, Chicago, IL, for United States Postal Service, defendant.

## MEMORANDUM OPINION AND ORDER

GOTTSCHALL, District Judge.

AT & T has brought this action against the United States Postal Service, claiming that the Postal Service violated provisions of the Postal Service Procurement Manual by entering into certain contracts for the management of pay telephones at various Postal Service facilities. The Postal Service has moved for summary judgment,[1] arguing that (1) a Postal Service Management Instruction, and not the Procurement Manual, contains the applicable guidelines for obtaining pay phones and management services; and (2) the procedure used by the Postal Service in awarding the contracts complied with the Management Instruction. For the reasons set forth below, the motion for summary judgment is denied.

Regulations governing the Postal Service come from several sources. According to 39 C.F.R. § 211.2:

The regulations of the Postal Service consist of:

\* \* \* \* \* \*

(2) The ... Postal Contracting Manual [superseded by the Procurement Manual, see 39 C.F.R. § 601.102] ... [and]

(3) ... Management Instructions ....

Thus both the Procurement Manual and Management Instructions provide regulations for the Postal Service.

AT & T claims that when the Postal Service entered into contracts with one of AT & T's competitors to manage pay phones at various Postal Service facilities, the Postal Service violated a provision of the Procurement Manual that requires competitive purchasing. Section 1.7.2.a of the Procurement Manual specifies that

"[p]urchases must be made on the basis of adequate competition whenever feasible" and that "[a]dequate competition means the solicitation and participation of a sufficient number of capable sources to ensure that the required quality and quantity of goods and services is obtained when needed, and that the price is fair and reasonable."

Although in general the Procurement Manual "applies to all purchasing activities," Procurement Manual § 1.1.1.b., the Postal Service argues that the competitive purchasing requirements in the Procurement Manual were not applicable here. The Postal Service notes that it may depart from the requirements in the Procurement Manual when there are "[p]rocedures or instructions developed to (1) meet specific operational needs or the needs of specialized commodity areas and (2) approved by the vice president of Purchasing and Materials." Procurement Manual § 1.4.1.c.2.

On May 31, 1995, the Postal Service promulgated Management Instruction No. AS–840–95–6, entitled "Acquiring Pay Telephones." The Postal Service argues that this Management Instruction created procedures for purchasing pay phones and pay phone services. Among other things, the Management Instruction contains "Acquisition Guidelines" and "Acquisition Procedures" for pay phones and services. The Postal Service contends that this Management Instruction identifies the procedures the Postal Service must use in acquiring pay telephones and pay telephone services and that the procedures—in particular the requirements for competitive purchasing—in the Procurement Manual do not apply.

AT & T argues that the Management Instruction applies only to the acquisition of pay telephones. The contracts here are for services for existing pay phones: management services and primary interex-

---

1. On March 20, 1997, this court denied the Postal Service's motion to dismiss. On Au- gust 1, 1997, this court denied AT & T's motion for summary judgment.

change carrier (PIC) services for 0+ calls. AT & T claims that the Management Instruction does not cover contracts for these types of services. AT & T cites to a bid protest decision by the Postal Service's Office of General Counsel. *Protest of U.S. Sprint Communications Company,* P.S. Protest No. 91–27, July 15, 1991. In the *U.S. Sprint* decision, the Postal Service contracting officer had argued that Section 362.6 of the Postal Service's Administrative Support Manual (ASM) supplanted the competition requirements of the Procurement Manual.[2] The General Counsel rejected this argument, finding that Section 362.6 covered only the buying or leasing of pay telephones themselves and did not apply to acquisition of PIC services. Subsequent to the *U.S. Sprint* decision, the ASM was revised and Section 362.6 was deleted.

With little discussion, AT & T argues that the Management Instruction "Acquiring Pay Telephones" is "materially the same as the provisions of the prior Section 362.6 of the ASM." (AT & T Resp. at 3.) The Postal Service argues that there are important differences between Section 362.6 and the Management Instruction.

Section 362.6 is concerned with the procedures for obtaining pay telephones, whether by lease or purchase. For example, Section 362.62 sets out various items that a postal facility must include in a request to the field division for pay telephones "[p]rior to any postal facility entering into an agreement to lease or purchase pay telephones." Section 362.63 is called "Procedures for Installation" and discusses the procedures for the installation of pay phones.

The Postal Service argues that the Management Instruction is broader than Section 362.6. For example, the Postal Service notes that Management Instruction states that "[t]his instruction provides policy and basic information for acquiring pay telephone *service.*" (MI at 1 (emphasis added).) The Management Instruction includes a subsection on "Commissions" in the "Acquisition Guidelines" section. This subsection specifies that "[s]election of the service provider should be based on which one can provide reliable service at the maximum possible commission." (MI at 3.) The Postal Service contends that these examples and others indicate that the Management Instruction should be construed broadly so as to apply to the contracts at issue here.

While the Management Instruction sets out in more detail than Section 362.6 the procedures and criteria for entering into pay phone leasing agreements, this court concludes that, like Section 362.6, the Management Instruction is concerned with leasing the pay phones themselves. As noted above, the Management Instruction is called "Acquiring Pay Telephones." The Management Instruction includes a brief discussion noting that "[l]easing pay telephones . . . is preferred to purchasing." (MI at 1.) The remainder of the Management Instruction sets forth who is responsible for entering into lease agreements, what information is necessary before entering into lease agreements, and what procedures should be used to enter into lease agreements. The Management Instruction contains an attachment entitled "Recommended Lease Agreement Provisions." In short, the Management Instruction provides guidance on leasing pay telephones. The Management Instruction appears to presume that the Lease Agreement will contain some provisions regarding pay phone services. The attachment to the Management Instruction recommends that lease agreements "include percentage of commission for: Cash calls. Calling card calls. Collect calls. Third party calls. Other operator-assisted long distance calls." (MI at 4.) However, the contracts at issue here are not leasing agreements. Instead, they involve provision of management services and other services for pay phones already installed

---

**2.** Like the Procurement Manual and Management Instructions, the Administrative Support Manual is a source of regulations for the Postal Service.

at Postal Service facilities. The *U.S. Sprint* decision distinguished between leasing agreements for the pay phones themselves and service agreements for already existing pay phones. This\ court makes the same distinction and finds that the Management Instruction does not apply to the contracts at issue here.

In addition, this court notes that even if the Management Instruction applied to the contracts at issue here, it is not clear from this rather undeveloped record that the Management Instruction eliminates the Procurement Manual's requirement of competitive purchasing. AT & T argues that the Management Instruction is not inconsistent with the competition requirements of the Procurement Manual. In response, the Postal Service contends that "the permissive guidelines in the Management Instruction for informal acquisition procedures ... are quite different from the rigid categorical requirements of the Procurement Manual." (Reply at 4.) In support the Postal Service quotes from the Management Instruction: the "manager should informally gather information from potential service providers." (MI at 3.) This seems to indicate that the Management Instruction is authorizing a less rigorous procurement process. However, the Postal Service neglected to mention a sentence later in the same paragraph: "Formal requests for information should be initiated through Purchasing and Materials ." This seems to imply some type of formal procedure should be used. The Management Instruction does not explicitly set out the procedures for selecting service providers nor does it explicitly state that the Postal Service (or more accurately the managers) are free to use noncompetitive purchasing. Based on this record the court cannot determine as a matter of law that the competition requirements of the Procurement Manual do not apply.

The Postal Service's motion for summary judgment [43] is denied. The parties are ordered to appear for a status on October 27, 1998 at 10:00 A.M.